Carr, J.
It was contended for the plaintiff in error, that the covenant declared upon, is a pure warranty which descended upon the heirs of the covenantor, and upon which this action of covenant did not lie against the administrator. In discussing this point, the counsel on both sides went into the ancient and obsolete doctrines of the pure common law warranty, embracing the warrantia chartce, voucher, and other points of learning connected with the subject. The view which I have taken of the covenant in this case, will render it unnecessary to explore this unfrequented path. Whether the writ of warrantia chartce be an existing remedy with us at this day, I shall not undertake to decide: but this I may say,—so entirely have the personal covenants in conveyances superseded the old common law warranty, that there is not one man in ten thousand, who, when he stipulates for a deed with warranty, means to take that common law assurance, which binds the lands only of his vendor, and gives him no remedy hut the warrantia chartce. In truth, this is never the intention of the contracting parties ; and therefore, in the construction of their covenants, I would hold those only to constitute a pure technical war *140 ranty, which come strictly up to the definition of it by the . . n , 7 7 • . 7 . ancient writers. Jhgo et heredes mei warrantizabimus m perpetuum: these are the technical words; the alienor for himself and his heirs warrants the lands forever. It is no covenant or agreement to warrant; it is an actual warranty: it is no covenant to warrant the title to the land; it is a warranty of the land itself. In these particulars the covenant before us differs from the warranty real; and the counsel for the defendant in error shewed, that these are by no means mere verbal differences; but if they were, I would, in this case, hold them important. There is another difference, held by lord Hardwicke to be important; which is that here, the word defend is added to the word warrant. Upon the whole, I am of opinion, that this is a personal covenant; that the action well lay against the administrator; and therefore that the judgement of the circuit court must be affirmed.
Cabell, J. I am clearly of opinion, that the judgement should be affirmed.
Brooke, J. I think the terms of the covenant in this case, make it a personal covenant, and not a pure warranty real at common law. In the first place, this is an executory contract, not a contract executed, as I understand the technical warranty real at common law to have been; it is a covenant to warrant; and it also differs from the terms of the pure warranty real, in being a covenant to warrant the title, not the land conveyed'. A covenant to warrant and defend the title, is a different agreement from a pure warranty, and admits of a different plea; for though it was argued, that a pure warranty is only a covenant, though it be a real one, and that on voucher by the warrantee, the warrantor must insist on his title, and that a covenant to warrant and defend the title, imports no more,—yet I think there is a wide difference between the two things. In warrantia chartce brought on the pure warranty real, upon the suppo *141 sition that the warrantee had been impleaded though in fact he had not yet been impleaded (a proceeding that might be had on the pure warranty); if the defendant by plea denied that the plaintiff was impleaded, he would thereby admit the warranty, and that it was broken, and judgement would be given for the warrantee; F. N. B. 34. K. Now this shews the difference between the covenant in the case before us, and the pure warranty: for I take it for granted, such a defence, on such a covenant as this, would not be an admission on the part of the defendant, that he had broken his covenant: on the contrary, such a defence would be held good; it would be equivalent to a denial, on the part of the defendant, that the title which he covenanted to warrant, had been disturbed or legally questioned; a denial, that any claim or demand against which he covenanted to warrant and defend, had been made by any person by suit. Or, suppose the plaintiff had been impleaded in a proper action, and he had vouched the defendant, the vouchee, in order to defend the premises warranted, must have shewn, that he was seized in fee at the time he made the warranty: he could not have shewn, that, though he had no title at that time, he then had the title,—as he might in this action of covenant, if I understand the import of the covenant to warrant,—because by shewing that the title was then in him, his covenant to warrant would not be broken. This illustration may be said to beg the question,—to take for granted, that the covenant in question does not amount to a pure common law warranty. But its object is, to shew that the covenant here was not intended by the parties for a pure common law warranty and nothing more, since the obsolete remedy by a writ of warrantia charlee, could not have been in the contemplation of the parties. As the law makes a part of every contract, and the parties are presumed to know the law; a departure from the terms which constitute a pure warranty real, is conclusive that the pure warranty real was not in their contemplation ; especially, as it hardly can be imagined, that the grantee meant to rely on the an *142 cient common law remedies upon a breach of the warranty real, one of which (the voucher) is taken away by statute, and the other obsolete, if not also abolished. In the case of Williamson v. Codrington, where the covenantor «obliged himself, his heirs, executors and administrators-to warrant and defend the plantation, negroes, cattle &c.” lord Hardwicke, after remarking on the subject of the covenant, said, “this clause is not penned as a real warranty; which is, I do for myself and my heirs warrant such land: here, the words are, 1 do oblige fyc. which amount to the same as I covenant fyc., for many words in a deed will amount to a covenant besides the word covenant, as 1 oblige, agree. This then is barely a covenant, for himself, his heirs, executors and administrators, to warrant; which word must be construed in a larger sense than warranty in a strict legal sense; as large as defend.'” Such, essentially, is the covenant before us. The grantor covenanted to warrant and defend the title in fee simple, as it was the fee simple in the land which he sold and conveyed. In substance, it was a covenant of seizin in himself; that is, that he was cloathed with the title in fee conveyed to the grantee. A covenant and agreement to warrant the title, is, I think, no more a warranty than a covenant to sell is a sale. Had the previous words in the covenant been the appropriate words to constitute a real warranty, with the words and defend superadded, I should doubt whether these last words would change the character of the contract, and make it a personal covenant (though lord Hardwicke has laid some stress on them, in the case just mentioned): for, in the case of Pincombe v. Rudge, Hob. 3. 28. the words and defend were added to the word warrant, and yet the judges treated it as a real warranty, though it was decided, that, as the warranty was broken by a claim to a term of years only, covenant well lay.
I think the fair conclusion from the authorities, is, that whenever there is a departure from the form of the real warranty we find in the books, from which to infer a change *143 of the contract, it must be considered a persona] covenant, . , , , , , , , . ■whether executors are named or not, and though the heirs are named, as in the case before us.
Although Í do not think it belonged to this case, to investigate the remedies on the real warranty at the common law; yet, as much was said by the bar on that subject, 1 have again consulted the books, and find that I was entirely correct in what I said concerning it, in Stout v. Jackson and Threlkelds v. Fitzhugh.
The judgement should he affirmed.
Tucker, P. Waiving the inference that this is a personal covenant, drawn from the expression I covenant to warrant, instead of the simpler form 1 do for myself and my heirs warrant, which lord Hardwicke thought a proper inference,—it is sufficient to rest this case upon the use of the word defend. This is a covenant not only to warrant but to defend. Now, the same great judge distinctly intimates, that the sense of the word defend, is larger than that of ivarrant. Therefore, where a party covenants to warrant and defend, the obligation to defend, cannot be identical with the obligation to warrant, because it means something more. Not being identical, it is therefore distinct; so that if, as I concede, the covenant to warrant, has here the operation of the common law warranty, yet the covenant to defend, has a separate and distinct operation. It is a distinct covenant, though contained in the same clause. And it is clearly not the technical warranty; for defendemus does not make a warranty, nor indeed any other word than warrantizabimus. Co. Litt. 384.a If then it be not the technical warranty, it is a personal covenant, as much a covenant of seizin or for good title. It is, in effect, much the same as a covenant for quiet enjoyment: for “ where a man is bound to warrant and defend, the warranty is” [that is, applies] “ when he is impleaded: but the defending, is to save the party that no stranger enters upon him.” 22 Vin. Abr. Voucher. B. pb 6. citing Br. 60. who cites 2 E. 4. 15. And judge Green, *144 accordingly, in Stout v. Jackson, remarks, that if a covenant of warranty binds the party not only to warrant, but to defend, the word defend, would be considered as making a personal covenant, equivalent to a covenant for quiet enjoyment. Indeed, it seemed to be admitted by the counsel in the argument, that if by one clause I covenant to defend, and by another clause I covenant to warrant, the first would make a personal, and the last a real covenant.' I cannot perceive, that the union of them in the same clause, will neutralize the operation of the covenant to defend. If in the same clause, I covenant to deliver a horse, and to pay a sum of money, or to pay money, and make a title to land, or that I have good title and right to convey; yet, in each of these cases, the covenants are distinct thQugh the clause is the same. In like manner, a covenant of seizin, and for quiet enjoyment, would be distinct covenants, though united in the same clause; and so, a covenant to warrant and defend ; since it is established by concurrent authorities, that they are not convertible terms.
Upon these reasons, and sustained by the opinion of lord Hardwicke, and the uncontradicted authority of a decision' more than 400 years old, as to the effect of a covenant to defend, I am of .opinion, that the covenant to defend in this case constituted a personal covenant; and so bound the personal representatives of the covenantor, whether named or not named. I am also of opinion that that covenant was broken by the entry of a stranger (having better title) under a judgement in ejectment.
Judgement affirmed.